UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARY E. BOLES,**

    **Plaintiff,**

v.                                                                   Case No.  8:06-CV-1261-T-EAJ

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**

_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United Sates Code, Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (Dkt. 12).

applicable legal standards. 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[3]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges that she became disabled on January 9, 2002 due to carpal tunnel syndrome, lumbar disc disease with radiculopathy, left knee and hip pain, diabetes, obesity, and depression. (T 16, 82, 89) Plaintiff filed an application for DIB on August 13, 2002. (T 59) Her application was denied initially on October 23, 2002, and after reconsideration on April 4, 2003. (T 67, 73) The ALJ held an administrative hearing on August 10, 2004.[4] (T 15, 26, 79) The ALJ denied benefits

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

[4] A discrepancy exists in the record regarding the date the administrative hearing occurred. The Notice of the Hearing and the ALJ's opinion state that the hearing occurred August 14, 2004 (T 15, 26, 79); however, the transcript of the hearing is dated July 10, 2006 which appears to be a typographical error. (T 35, 37, 58) The court finds that the hearing took place on August 14, 2004 (Dkt. 26).

to Plaintiff in a decision dated January 14, 2005. (T 12-24) The Appeals Council denied Plaintiff's request for review on May 12, 2006, allowing the ALJ's decision to stand. (T 4-6) Plaintiff filed a timely petition for judicial review of the Commissioner's denial after exhausting all administrative remedies (Dkt. 1). The Commissioner's decision is ripe for review under the Act.

At the time of the ALJ's decision, Plaintiff was forty-eight years old and had a high school education as well as a two-year associate degree in social science. (T 82, 95, 440) Her past work experience includes work as a police stenographer and a police records clerk. (T 54-5, 90, 102, 132)

To determine if Plaintiff is disabled, the ALJ performed a five-step evaluation. First, the ALJ found that although Plaintiff alleged to have become disabled in January 2002, Plaintiff was still engaged in substantial gainful activity through December 2002. (T 16, 23) Subsequent to that date, Plaintiff ceased to be engaged in any substantial gainful activity. Id. Second, after examining the medical evidence, the ALJ found that Plaintiff had "severe" level impairments of morbid obesity with cervical disc bulging and lumbar degenerative disease, carpal tunnel syndrome with status post right release, and left knee arthritis. (T 17-20, 23) The ALJ also considered Plaintiff's complaints of depression and sleep apnea but did not find these conditions to be "severe." (T 18, 20) Third, the ALJ determined that the combination of all Plaintiff's impairments - both severe and non-severe - did not meet or medically equal an impairment listed in the Listing of Impairments. (T 20, 23)

Moving to the fourth step, the ALJ evaluated Plaintiff's residual functional capacity (RFC). The ALJ noted that Plaintiff's claim of not being able to work because of back and hand pain to be unsupported by medical examinations. (T 21) The examinations showed a lack of disc herniation or stenosis in the back and nerve conduction non-indicative of carpal tunnel syndrome with full grip strength in the hands. (T 21, 192-3, 295, 412) The ALJ also noted Plaintiff testified that she was

able to do light household work. ( T 47) The ALJ determined that Plaintiff had the RFC to perform a significant range of light work[5] with the specific limitation of no repetitive handling and fingering. (T 21, 23, 55-6) Based upon Plaintiff's RFC and due to the fact that Plaintiff's past relevant work involved the need for fast and frequent typing, the ALJ determined that Plaintiff could no longer perform the duties of her past employment positions. Id.

In the fifth and final step, the Commissioner must show that a significant number of other jobs exist in the national economy that Plaintiff can perform consistent with her work experience, age, education, and RFC. The ALJ determined that, in accordance with 20 C.F.R. § 404.1563, Plaintiff is a "younger individual," that in accordance with 20 C.F.R. § 404.1564, Plaintiff has "more than a high school education," and that based upon the testimony of a vocational expert ("VE") and in accordance with 20 C.F.R. § 404.1568, Plaintiff has no transferrable skills from her previous employment. (T 23) The VE also testified that, accounting for Plaintiff's age, education, and RFC, several jobs in the national economy existed which the Plaintiff could perform. (T 21-2, 56-7) These jobs included wheelchair rental clerk, storage facility rental clerk, and teacher aid II. (T 22, 56-7) Based upon the VE's testimony, the ALJ concluded that Plaintiff could successfully adjust to work which existed in significant numbers in the national economy. (T 22-3, 56-7) As such, the ALJ found that Plaintiff is not disabled as defined by the Act. (T 23)

---

[5] Light work, defined by 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lighting and carrying of objects weighing up to ten pounds. The regulations also state that: "Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to site for long periods of time."

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff argues that the Commissioner erred by (1)(a) failing to fully and adequately weigh the substantial evidence in finding Plaintiff's depression as non-severe and (b) failing to fully and adequately develop the record in regards to Plaintiff's depression; and (2) failing to follow proper legal principles and procedures in addressing Plaintiff's sleep apnea. (Dkt. 23 at 2, 6)

**1(a).** Plaintiff contends that the psychological evaluation conducted by A.G. Gonzalez, M.D. ("Dr. Gonzalez") was not properly relied upon by the Commissioner in determining the severity level of Plaintiff's mental condition. Specifically, Plaintiff asserts that if Dr. Gonzalez's evaluation is considered consultative under 20 C.F.R. § 404.1519, it was not given proper consideration. Plaintiff argues that Dr. Gonzalez's assessment that without vigorous psychiatric treatment Plaintiff would be "permanently and totally disabled" and Plaintiff's Global Assessment Functioning ("GAF") score of 50 were not accorded the proper weight[6] (Id. at 10-11). Plaintiff complains that the ALJ minimized Dr. Gonzalez's report while placing improper emphasis on non-examining state agency physicians' reports. (Id. at 8)

Contrary to Plaintiff's position, the record does not reflect that Dr. Gonzalez conducted a consultative examination at the behest of the Administration. (T 3) Dr. Gonzalez's records and testimony from Plaintiff indicate that Dr. Gonzalez was Plaintiff's treating physician from August

---

[6] The GAF test aims to measure an individual's psychological, social, and occupational functioning on a scale of mental health/illness using a scale of one to one hundred. See American Psychiatric Association, Diagnostic and Statistical Manual 27-36 (4th ed. 2000) ("DSM-IV"). A GAF score of 41-50 indicates a "serious impairment in social, occupational, or school functioning."

2002 to June 2003[7]. (T 50, 340, 436)

In regard to the ALJ's consideration of Dr. Gonzalez's evaluation, when determining whether an individual is disabled, the testimony of a treating physician must be given considerable weight unless good cause is shown to the contrary. Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004). An ALJ may commit error by substituting his own uniformed medical opinion for that of a claimant's treating physician absent good cause. Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986). Additionally, the ALJ commits error if he fails to articulate the reasons for determining good cause for affording the treating physician's opinion less weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause for discrediting a treating physician's opinion on disability exists where the doctor's opinion is not supported by the evidence, is inconsistent with the physician's own medical records, or merely is conclusory. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ noted that "[Gonzalez] questioned the validity of the claimant's profile because she responded positively to a high number of bad symptoms." (T 20) Concerning the validity of his diagnosis in August 2002, Dr. Gonzalez stated that "[this] profile may very well be invalid. A random or an all "True" response set is possible. Other explanations include faking bad, inadequate reading ability, psychotic thought processes, or a cry for help. The accuracy of the following interpretations is very questionable." (T 329) Dr. Gonzalez's report also mentioned that barring

---

[7] Plaintiff's hearing testimony states that she treated by Dr. Gonzalez for her depression; she does not mention any other treating physicians for her depression. (T 50) Dr. Gonzalez first treated Plaintiff on August 23, 2002. (T 340) Dr. Gonzalez's records show treatments on October 16, 2002 and November 25, 2002. (T 328) Page 436 of the record appears to be a continuation of Dr. Gonzalez's treatment notes. (T 436). According to these notes, Dr. Gonzalez treated Plaintiff from January 2003 to June 2003. (T 340, 436)

"vigorous" treatment, Plaintiff would become permanently disabled due to a combination of pain and depression. (T 342)

The ALJ's decision notes the inconsistency of Dr. Gonzalez's opinion. (T 20) The ALJ found that Plaintiff "has not required intensive psychiatric treatment or hospitalization nor any other aggressive psychotherapy on a continuing basis." (T 20) Plaintiff sought treatment from Dr. Gonzalez on seven occasions over a ten month period.[8] (T 436) Dr. Gonzalez's records do not indicate any psychiatric treatment other than medication which improved Plaintiff's condition.[9] Id. After June 2003, there is no evidence of Plaintiff receiving any further psychiatric treatment. When the ALJ asked Plaintiff about treatment for her depression at the August 14, 2004 hearing, Plaintiff responded that she ceased treatment with Dr. Gonzalez after he retired and she did not receive a referral to continue treatment elsewhere.[10] (T 50) Because Dr. Gonzalez's opinion is inconsistent with his own medical records, the ALJ had good cause for discrediting Gonzalez's opinion.

Furthermore, the ALJ noted that, although Plaintiff claimed she was unable to work in January 2002, she worked part-time until December 2002. (T 16, 39, 87) From January 2002 to December 2002, she earned $22,545, which is a similar amount to what she earned in the previous years and for which she accrued four quarters of coverage in 2002. (Id.) Part-time work may

---

[8] The dates of Plaintiff's treatments with Dr. Gonzalez were: August 23, 2002, October 16, 2002, November 25, 2002, January 27, 2003, March, 10, 2003, April 23, 2003, and June 24, 2003. (T 340, 436)

[9] Dr. Gonzalez's records show that Plaintiff was prescribed the anti-depressant Remeron at a dosage of 15mg. (T 436)

[10] Whether a patient sought treatment for an impairment is a proper factor for an ALJ to consider in making a decision regarding the severity of that impairment. 20 C.F.R. § 404.1529(c)(4).

constitute substantial gainful work. 20 C.F.R.§ 404.1572. Plaintiff's ability to work at the same levels as she did in prior years also undermines Dr. Gonzalez's opinion.

The ALJ did not err by failing to specifically mention Plaintiff's GAF score in reaching his decision. In August 2002, Dr. Gonzalez's assigned Plaintiff a GAF score of 50. (T 342) However, GAF scores are not considered to be in direct correlation to the severity requirements for disability claims and are thus not endorsed for use in the Social Security and SSI disability programs. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); Wind v. Barnhart, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005).

Additionally, to account for day to day variations in functioning, a GAF score is considered to be the lowest level of functioning for the week in which it was assessed. (DSM-IV at 33) As such, Plaintiff's GAF score of 50 only reflects her functioning during one week of August 2002. Dr. Gonzalez's notes do not indicate that another GAF was performed at anytime during the ten month treatment program from August 2002 through June 2003. (T 328-61, 436) Moreover, Dr. Gonzalez's notes from this period indicate that medication improved Plaintiff's condition. Id. Thus, even if Plaintiff's GAF scores were considered, the record supports the ALJ's finding of non-severity based on the other evidence discussed.

After evaluating Dr. Gonzalez's report, the ALJ also discussed the State Agency physicians' reports concerning Plaintiff's mental health. (T 20) These non-examining physicians reviewed documentary medical evidence of Plaintiff's depression in October 2002 and January 2003. (T 296-309, 370-83) Psychiatrist Nancy Dunwoodie, M.D. ("Dr. Dunwoodie") and psychologist Michael Dow, Ph.D. ("Dr. Dow"), the reviewing state physicians, both determined that Plaintiff's depression caused only mild restriction daily her activities and mild difficulties in her concentration and social

functioning. (T 306, 380) Dr. Dunwoodie and Dr. Dow also concluded that Plaintiff's depression had not caused any episodes of decompensation. Id. Dr. Dow also noted that Plaintiff's limitations on work appeared to be primarily physical. (T 382) Both Dr. Dunwoodie and Dr. Dow ultimately diagnosed Plaintiff's depression as non-severe. (T 296, 370)

Plaintiff has not shown any error in the ALJ's decision making process. The record reflects that the ALJ properly considered the records of the treating physician and did not merely focus on the reports from the state agency physicians. (T 20)

**1(b).** Plaintiff contends that the ALJ erred in not fully developing the record by not ordering a consultive evaluation for Plaintiff's depression. Plaintiff claims that if Dr. Gonzalez's evaluation is consultative, it was inadequate under 20 C.F.R. § 404.1519(a) as the ALJ's decision failed to adequately identify the evaluation, Dr. Gonzalez's credentials, or that the minimum requirements for a consultative examination were not followed (Dkt. 23 at 9-10). Plaintiff also claims that under Reeves v. Heckler, 734 F.2d 519 (11th Cir. 1984), a consultative examination is required before the ALJ can determine the severity of her depression and failure to provide one constitutes reversible error. ( Id.)

Hearings before administrative law judges are non-adversarial and as such the ALJ has a basic obligation to develop a full and fair record. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Additionally, "in any case where there is evidence which indicates the existence of a mental impairment the Secretary may determine that the claimant is not under a disability only if the Secretary has made every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." 42 U.S.C.A. § 421(h); McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988). However, the Commissioner is not under obligation to secure evidence of a disability for a claimant;

9

statute directs that duty falls to the claimant. 20 C.F.R. § 404.1512. If a claimant does not provide medical evidence tending to show an impairment that interferes with capacity to work, the Commissioner makes a decision based on the information in the record. 20 C.F.R.§ 404.1516.

As discussed earlier, there is no indication from the record that Dr. Gonzalez's examination was a consultive evaluation. (T 3) Dr. Gonzalez is identified at multiple points in the record as Plaintiff's treating physician. (T 50, 328-61, 436)

Plaintiff's argument that the ALJ failed to develop the record by ordering a consultative exam is without merit, and her reliance on Reeves is misplaced. In Reeves, the court vacated and remanded where the ALJ failed to order a consultative examination by an orthopedist even though the Commissioner's consulting doctor recommended such an evaluation. Reeves, 734 F.2d at 552 n. 1.

Here, the only evidence Plaintiff has provided of her depression are the medical records of her treating physician Dr. Gonzalez. (T 328-61, 436) As discussed previously, Dr. Gonzalez's report was contradictory and the ALJ had good cause to discredit his opinion. Drs. Dunwoodie and Dow, the consulting state agency physicians, both diagnosed Plaintiff's depression as non-severe. (T 296-308, 370-382) Dr. Dow even stated that he felt Plaintiff's limitations were primarily physical. (T 382) Unlike the situation in Reeves, no other physician recommended an additional consultative examination and the record was sufficiently developed for the ALJ to make a determination. See Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999)(where record sufficient for a decision, the ALJ need not order an additional consultative examination).

**2.** Plaintiff contends that the Commissioner erred in by failing to address the severity or non-severity of Plaintiff's alleged condition of sleep apnea (Dkt. 23 at 11).

Plaintiff complains that the ALJ's decision, while addressing her sleep apnea, does not specifically classify the condition as severe or non-severe. (Id.) Plaintiff claims that under Williams v. Barnhart, 186 F. Supp. 2d 1192, 1198 (D. Ala. 2002), failure to label her sleep apnea as severe or non-severe is reversible error (Dkt. 23 at 11).

Contrary to the facts in Williams, the ALJ addressed Plaintiff's history of sleep apnea in the decision. Though the claimant did not specifically list sleep apnea as one of her impairments, the ALJ noted that she sought treatment in October 2002 and January 2003 from Juan Cevallos, M.D., FCCP ("Dr. Cevallos"). (T 18) Plaintiff's medical records indicate that Dr. Cevallos ordered a sleep study in for Plaintiff in September 2002 and diagnosed Plaintiff with sleep apnea and snoring in October 2002. (T 385-6, 399) The ALJ also indicated that Plaintiff underwent both oxygen therapy and CPAP titration therapy under the care of Dr. Cevallos. (T 18) Dr. Cevallos' medical records indicate that the CPAP titration therapy resulted in "complete elimination of snoring and sleep apneic events." (T 389) After satisfactory treatment in January 2003, Plaintiff's medical records show only one further complaint of sleep problems on February 2003. (T 439) Plaintiff's sleep complaints on that occasion were in reference to pain interfering with her sleep, not to further apneic events. (Id.) Thus, Plaintiff's sleep apnea is a non-severe impairment because the medical evidence shows the condition did not continue for twelve months as required by statute. See 20 C.F.R. § 404.1505(a).

In addition, the ALJ found that Plaintiff's "impairments are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (T 20) This language has been held sufficient to discharge the Commissioner's obligation to consider

impairments in combination.  Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986). Accordingly, the ALJ did not err in failing to address the severity or non-severity of Plaintiff's alleged condition of sleep apnea in the decision because that condition was implicitly found to be non-severe and there is substantial evidence to support this finding..

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. Accordingly, the decision of the Commissioner is therefore **AFFIRMED**.

Accordingly and upon consideration, it is **ORDERED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and the case **DISMISSED**, each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

DONE AND ORDERED in Tampa, Florida this 24th day of September, 2007.

_____
ELIZABETH A JENKINS
United States Magistrate Judge